

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# Glavatovic v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Glavatovic v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1610.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1610

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4662

_____

MOMO GLAVATOVIC

Petitioner

v.

*ATTORNEY GENERAL OF THE UNITED STATES
DEPARTMENT OF HOMELAND SECURITY

Respondents

*Pursuant to F.R.A.P. 43(c)

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A73-531 730)

_____

Submitted under Third Circuit LAR 34.1(a)
September 29, 2006

Before: RENDELL, ROTH and GIBSON*, Circuit Judges

(Opinion filed February 16, 2007)

_____

O P I N I O N

_____

*Honorable John Gibson, Eighth Circuit Judge, sitting by designation.

**ROTH,** <u>Circuit Judge</u>:

Momo Glavatovic petitions for review of the order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his motion to reopen his deportation proceedings held *in absentia*. We will deny the petition.

## I. Background and Procedural History

Momo Glavatovic, a citizen of the former Yugoslavia, was admitted into the United States in August, 1994, as a non-immigrant visitor for pleasure authorized to remain in the country for six months. Before his visa expired, Glavatovic applied for asylum and withholding of removal claiming persecution on a variety of grounds. On March 1, 1995, Glavatovic was informed that his asylum request had not been granted because his testimony at the asylum interview was not credible on material points of his claim, and his file was referred to an immigration judge.

A few days later, Glavatovic was served with an order to show cause which informed him that he could be deported if he failed to appear at the scheduled time and was found to be deportable. After Glavatovic requested a rescheduling, an initial hearing was held on June 6 and on the same date Glavatovic was served with a notice to appear for an asylum hearing on June 20. Also on June 6, Glavatovic responded (with the assistance of a notary public) that he wished to withdraw his asylum application to apply instead for an I-130 petition for alien relative on the basis of his marriage to a U.S. citizen (which took place two days later). The IJ responded to the address on Glavatovic's June 6 letter, ordering

Glavatovic to appear at the June 20 hearing notwithstanding his desire to abandon his petition for asylum. Glavatovic did not appear and the IJ, after finding that Glavatovic had received proper notice of the proceeding, ordered him deported *in absentia*. In addition, the IJ deemed abandoned for lack of prosecution any other applications for relief from deportation Glavatovic may have submitted. The decision was mailed to Glavatovic's last known address, i.e., the one he had provided in the notarized letter of June 6. Glavatovic, however, remained in the United States.

On February 12, 2004, over eight years after his deportation was ordered, Glavatovic filed a *pro se* motion to reopen his deportation proceedings in order to apply for readjustment of status. He stated that after the LIFE Act of 2000 was enacted, the Immigration and Naturalization Service (now Citizenship and Immigration Service) had granted a petition for immigrant worker filed on his behalf subsequent to U.S. Department of Labor approval.[1] He admitted he had remained in the United States after the deportation order, but claimed he had done so because he was married to a United States citizen and was pursuing a petition for alien relative; he also stressed he had been gainfully employed in the United States and had no criminal record. He did not argue that he had not been notified of the June 20, 1995,

---

[1] One of the provisions of the Legal Immigration Family Equity Act (or LIFE Act) of 2000, P.L. 106-553, Title XI, allowed certain individuals residing in the United States, who were barred from adjusting their status although they might be eligible for an immigrant visa, to apply for adjustment of status without leaving the country.

At some point between June 1995 and February 2004, Glavatovic and his U.S. citizen wife had obtained a divorce, so he could not attempt to adjust status through his marriage.

3

hearing at which he was ordered deported *in absentia*.

The IJ held Glavatovic's motion was untimely both as a motion to rescind the deportation order and as a motion to reopen in order to apply for adjustment of status on the basis of new, previously unavailable relief: Glavatovic was personally served with proper notice of the June 20, 1995, deportation hearing (and thus could not benefit from the open deadline resulting from a lack of notice) and had filed his motion far beyond the other applicable deadlines.

Glavatovic appealed the decision to the BIA, arguing for the first time that he had not received either the June 6, 1995, notice of the June 20 hearing or the IJ's letter of June 14 reiterating that Glavatovic must attend despite his desire to withdraw his application for asylum. He stated that the notary public who had helped him prepare his letter to the IJ of June 6, announcing his intention to withdraw his asylum application, had mistakenly used his old address.

By order of November 24, 2004, the BIA adopted and affirmed the IJ's decision. It found Glavatovic had been personally served the Order to Show Cause and Notice of Hearing, and that the notice of hearing was sent to the address contained in Glavatovic's notarized letter of June 6. Glavatovic timely filed a petition for review with this court.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252. Denials of motions to reopen removal proceedings fall within the discretion of the BIA. *See* 8 C.F.R.

4

§ 1003.2(a).  Thus, we review the BIA's denial of Glavatovic's motion to reopen for abuse of discretion. *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir.2005).  Under this standard, the BIA's decision will be reversed only if it was "arbitrary, irrational, or contrary to law." *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir.1994).  Because the BIA both adopted the IJ's findings and discussed some of the bases for the IJ's decision, both the BIA's and the IJ's decisions are before us for review.  *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

## III.  Analysis

Motions to reopen are generally disfavored; "[t]his is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992).

Under the Immigration and Nationality Act, "[a]ny alien who, after written notice ... has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . ."  8 U.S.C. § 1229a(b)(5)(A).

An alien whose deportation is ordered *in absentia* may challenge his deportation by either moving to rescind the order, or moving to reopen the proceedings without necessarily challenging the grounds on which the order was entered in the first place.   *Matter of M-S-*, 22 I & N Dec. 349, 352-54 (BIA 1998).  These two types of challenges are subject to

5

different statutory and regulatory provisions.

At the time relevant to this appeal, an alien seeking rescission of a deportation order issued *in absentia* must file a motion to reopen either "within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined . . . )" or "at any time if the alien demonstrates that the alien did not receive notice." 8 U.S.C. § 1252b(c)(3) (repealed 1996; recodified in substantially similar form at 8 U.S.C. § 1229a(b)(5)(C)).

In contrast, an alien who moved to reopen deportation proceedings held *in absentia* in order to apply for relief that was not available at the time of the hearing must file his motion "within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on or before September 30, 1996, whichever is later." 8 C.F.R. § 100.23(b)(1); *Matter of M-S-*, 22 I & N Dec. at 357.[2]

On their face, Glavatovic's pleadings before the IJ, the BIA, and this Court do not argue that rescission of the deportation order is appropriate, but merely move for reopening of the proceedings on the basis of relief not available at the time the deportation order was entered (the possibility of adjustment of status based on Glavatovic's new work papers). As

---

[2] The difference between rescission of a deportation order and reopening of proceedings is that the latter does not necessarily abrogate the order. *Id.* at 352-54; *see Wu v. INS*, 436 F.3d 157, 163 (2d Cir.2006) (explaining that, under certain circumstances, a petitioner who has been ordered removed *in absentia* may seek reopening to apply for discretionary relief under the general reopening regulations without seeking rescission of the removal order under 8 U.S.C. § 1229a(b)(5)(C)).

motions to reopen to apply for readjustment on a new basis, they are subject to the 90-day deadline established by 8 C.F.R. § 100.23(b)(1) and are clearly untimely, having been filed over eight years after the deportation order was issued.

Glavatovic, however, also argues that he never received the IJ's letter of June 14, instructing him to appear at the June 20 hearing, because it was sent to the address mistakenly used by the Notary Public in Glavatovic's letter to the court of June 6. Combined with his insistence that "[t]he time limitations governing motions to reopen relating to *in absentia* orders of deportation are disapplied," which is incorrect as a general proposition and which he supports with citations to the C.F.R. sections on the rescission of deportation orders and to BIA decisions on the same issue, Glavatovic's factual contention that he did not receive the June 14 letter can be construed as an inartful argument that he, in fact, moved to rescind the deportation order and did so timely under 8 U.S.C. § 1252b(c)(3) because he had not received proper notice of the June 20 hearing. Even when so understood, however, Glavatovic's argument has no merit.

First, Glavatovic was clearly served with the June 6 notice of the June 20 hearing, since Glavatovic's letter of June 6 responds to "the notice received from [the IJ's] office dated Jun 1995" (and indeed, Glavatovic no longer contends he did not receive that notice). Second, even if Glavatovic did not receive the IJ's letter of June 14 reiterating that he must be present at the June 20 hearing, the court's mailing of the letter, by Federal Express mail, to the address contained in the notarized letter Glavatovic had sent the court just a week

earlier constitutes sufficient notice. *See Fuentes-Argueta*, 101 F.3d 867, 872 (2d Cir. 1996) (immigration judge provided alien with adequate notice of her second deportation hearing by conveying notice of hearing by certified mail to alien's last known address where the alien failed to inform the court of an address change, even though it was returned "unclaimed"); *Gurung v. Ashcroft*, 371 F.3d 718, 721 (10th Cir.2004) (notice of an exclusion hearing sent by regular mail to the last address provided by the alien satisfies the requirements of constitutional due process). Thus, since Glavatovic does not satisfy the requirements for permission to file a motion to rescind "at any time," his motion cannot be considered timely under 8 U.S.C. § 1252b(c)(3)(B).

## IV. Conclusion

Because Glavatovic failed to demonstrate lack of notice to justify his failure to appear at his removal proceedings and his motion to reopen in order to apply for readjustment of status on the basis of previously unavailable relief was untimely, the BIA did not abuse its discretion in denying his motion to reopen. Therefore, we will deny the petition for review.